Frank E. Neal, Appellee, v. Lincoln Oil Refining Company, Appellant.

Gen. No. 8,667.

208

 Opinion filed January 16, 1933.

McCarty & McCarty and Charles Troup, for appellant.

Grant & Jones and Jones, McIntire & Jones, for appellee; John E. Sebat and V. W. McIntire, of counsel.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an action of trespass on the case brought by appellee against appellant to recover damages occasioned to appellee's automobile by fire while it was stored in appellant's garage.

The declaration was in one count and in substance alleged: That on the 2nd day of November, 1931, appellant was in possession of a building at 136 North Hazel street in Danville, Illinois, and was there conducting a public garage for storage of automobiles for hire, and appellee had rented space in said garage for the storage of his automobile from month to month and was paying appellant its regular monthly charge therefor; that on the date aforesaid appellee had his Packard sedan, which was in good condition and of the value of $1,000, stored in said garage, and it then and there became the duty of appellant to use ordinary care to safely keep and store said automobile and deliver the same to appellee on demand in good condition; yet appellant did not regard its duty or use due care in

that behalf but on the contrary on the day aforesaid by the negligence of appellant and its servants, said automobile of appellee was damaged by fire and lessened in value.

Appellant filed the general issue. There was a trial by jury and verdict and judgment against appellant in the sum of $73 and appellant has appealed.

Appellant first assigns error in that the declaration merely charges general negligence, and does not specify any particular acts of negligence and therefore does not state a cause of action. This assignment of error is not argued and is therefore abandoned.

It is further assigned as error that the court did not instruct the jury to find a verdict for appellant. The question of law presented upon a motion to direct a verdict is whether, when all of the evidence is considered, together with all reasonable inferences drawn from it in its most favorable aspect to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case. (*Foreman-State Trust & Savings Bank v. Demeter*, 347 Ill. 72; *Coal Creek Drainage & Level Dist. v. Sanitary Dist. of Chicago*, 336 Ill. 11.)

If the evidence tends to prove the allegations of the declaration, the trial court should refuse to give an instruction to find for the defendant and should submit the questions of fact to the jury under proper instructions. (*Pittsburgh, C., C. & St. L. Ry. Co. v. Banfill*, 206 Ill. 553; *Staunton Coal Co. v. Bub*, 218 Ill. 125.)

It has been held in this class of cases that, although the bailor, by showing that the goods were received in good condition and were not returned by the bailee, makes out a prima facie case, if the bailee offers evidence tending to show that he was not negligent the burden is still on the bailor to show that the bailee was, in fact, negligent and that his negligence caused the loss, or contributed thereto. *Miles v. International Hotel Co.*, 289 Ill. 320.

In this case, after appellee had made out a prima facie case and appellant had submitted proofs on its part, tending to show due care and that the fire was not caused by any negligence on the part of appellant, appellee submitted proofs tending to show the following state of facts:

The garage operated by appellant and in which appellee's car was stored at the time of the fire, was a brick building fronting on Hazel street, a north and south street in the City of Danville, Illinois. It was known as the Hotel Wolford garage and was sometimes spoken of as the Lincoln garage. A public alley runs north and south along the rear end of the building and a private alley runs east and west along the north side separating it from a filling station, also operated by appellant. The main entrance to the garage for vehicles was on the north side and near the front end, opening from the filling station. Another door opened from the rear of the garage into the public alley.

The furnace room was in the main body of the garage located in the northwest corner and was inclosed in a separate room about 14 feet long and 10 feet wide. The roof of the furnace room was made of timber and was about 12 feet above the floor. In the furnace room at the time of the fire was a wooden barrel containing sawdust which was used to clean up grease and oil any place in the building or on the floor where grease or oil dropped on the concrete. This barrel was about five or six feet from the oil heater. After the fire the wooden staves on the barrel had been burned, but the sawdust, which was watersoaked, remained as if in a mold.

The garage was heated with steam generated by an automatic oil heater known as a Williams Oilomatic. This heater was in the furnace room, and set five or six inches above the floor.

The Oilomatic heater was designed and equipped to burn fuel oil, which is a heavier oil than kerosene, but

at the time of the fire appellant was burning kerosene in this burner and had been for some time prior to the fire. The effect of burning kerosene in an Oilomatic burner designed to burn heavy oil is that it is very liable to puff, as the kerosene is too fast for it. This puff is in the nature of a mild explosion and if severe might blow the door open. E. J. Ryan, who has been in the heating contracting business in Danville for 38 or 39 years and who sells and services the Williams Oilomatic heater, was called over to the garage two or three days before the fire to service this oil burner. At the time he was there there was a lot of sawdust on the floor of the furnace room saturated with oil. This sawdust was about an inch and a half thick and covered a place about three feet long on the north side of the burner. Ryan had a talk that day with Bradbury, appellant's manager, and asked him why he was burning kerosene in the Oilomatic and Bradbury said that his company made kerosene but did not handle fuel oil. Ryan says that he probably said something to Bradbury about whether he should or should not burn kerosene in the burner but that he was not positive; that he would caution anybody not to burn kerosene in an oil heater. Ryan did tell Bradbury on this occasion that the machine was not made to burn kerosene and that they would have bad luck with this burner if they did not quit using kerosene in it.

The fire started in the Oilomatic burner. An employee by the name of John Stuth went back and tried to put the fire out with a fire extinguisher and when Bradbury saw that Stuth could not extinguish the fire he called the fire department. When the fire was first discovered, flames were enveloping the oil heater. The fire proceeded from that place to the wooden ceiling which caught fire and from which the flames spread to the room where the cars were. When the fire department arrived, the back of the garage was in a mass of flames. The fire had spread to the main part of the

garage at that time. The roof over the furnace room was a mass of flames and the whole back corner was aflame. The firemen put a line of hose in the north window and then went to the back door and knocked it in and put a line of hose in it at that place. At the time of the fire there were some boards and boxes and other small stuff which the assistant fire chief characterized as junk and waste on top of the wooden ceiling over the furnace room. When the fire was put out the remains of these boards and boxes could be seen. It required about an hour and 20 minutes to extinguish the fire.

The furnace in which the Oilomatic heater was installed had formerly been equipped with coal grates and when the oil heater was installed the ash pit door was taken away and in that place was put a four-inch tube of the burner, and the remainder of the opening was closed up with fire brick covered over with asbestos. After the fire a piece of the asbestos was found to have been broken out in one corner.

There was no dispute as to the injury of appellee's car, caused by the fire, and the expense of the repairs. There was no error on the part of the court in refusing to instruct the jury to find a verdict for appellant and we cannot hold that the verdict is manifestly against the weight of the testimony.

Appellant assigns error upon the court's refusal to give nine instructions on behalf of appellant. The court gave nine instructions for appellant which stated all of the law of the case. A part of the instructions refused did not state the law of the case and the others were covered by the instructions given.

Other assignments of error were made but were not argued and were therefore waived.

Finding no error in the record that would warrant a reversal of the judgment, the verdict and the judgment of the circuit court of Vermilion county are affirmed.

*Affirmed.*